**THE GIMINO LAW OFFICE, APC**
Peter J. Gimino III, Esq. (SBN 198926)
pgimino@giminolaw.com
18101 Von Karman Avenue, Suite 300
Irvine, CA 92612
Telephone: (949) 225-4446
Facsimile: (949) 225-4447

**WOODROW & PELUSO, LLC**
Steven L. Woodrow*
swoodrow@woodrowpeluso.com*
Patrick H. Peluso*
ppeluso@woodrowpeluso.com*
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809
**Pro Hac Vice* admission to be filed

Attorneys for Plaintiff Jennifer Botelho, d/b/a
Chiropractic Center of Los Angeles, and the Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| **JENNIFER BOTELHO d/b/a CHIROPRACTIC CENTER OF LOS ANGELES,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TECHNOLOGICAL MEDICAL ADVANCEMENTS L.L.C.,** a Florida limited liability company,<br><br>Defendant. | Case No. 2:16-cv-8085<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jennifer Botelho, d/b/a Chiropractic Center of Los Angeles (“Chiropractic Center of Los Angeles” or “Plaintiff”), brings this Class Action Complaint against Defendant Technological Medical Advancements L.L.C. (“Technological Medical Advancements” or “Defendant”), to stop its practice of sending unsolicited fax advertisements to consumers and businesses, and to obtain

redress for all persons or entities similarly injured by its conduct. Plaintiff Chiropractic Center of Los Angeles, for its Class Action Complaint, alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

## PARTIES

1. Plaintiff Jennifer Botelho, d/b/a Chiropractic Center of Los Angeles, is a sole proprietorship. Chiropractic Center of Los Angeles' principal place of business is in Los Angeles, California.

2. Defendant Technological Medical Advancements L.L.C. is a limited liability company incorporated and existing under the laws of the State of Florida, with a principal place of business at 3879 Byron Drive, Riviera Beach, Florida 33404. Technological Medical Advancements does business throughout the nation, including in the State of California and in this District.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which is a federal statute.

4. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in the State of California and in this District.[1]

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District

---

[1] *See, e.g.* http://www.prweb.com/releases/2015/07/prweb12829203.htm ("Technological Medical Advancements, LLC (TMA) will hold a physician educational seminar at the Olympic Conference Center in Los Angeles."); http://www.tmainternational.com/store-locator (Defendant's website, listing multiple locations within this District); https://www.linkedin.com/jobs/view/180223037 ("We are seeking independent contractor medical device sales representatives to sell a leading edge medical laser device for pain management, wound healing and surgery." – position is based in Los Angeles, within this District.)

and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON ALLEGATIONS OF FACT

6. This case challenges Defendant's practice of sending unsolicited fax advertisements.

7. Defendant sells a Class IV high power medical laser under the trade name "Diowave."[2] The Diowave laser is marketed as providing drug free pain relief and is marketed primarily to medical professionals and doctors' offices. The Diowave laser ranges in price from $14,999 to $49,999.[3]

8. To market the Diowave laser to potential clients including doctors' offices, Defendant sends out unsolicited faxes that advertise the existence of Defendant and its Diowave lasers through seminars where Defendant purports to teach medical professionals about Defendant's Diowave lasers so that doctors will purchase and/or lease them from Defendant.[4] While Defendant's fax advertisements may state that there is no fee to attend Defendant's seminars, the majority of the presentation revolves around the benefits of their Diowave Laser System and how doctors who purchase or lease the Diowave equipment from Defendant can increase their revenue. All of these factors combine to convince the seminar attendee to purchase or lease the Diowave laser.

9. In fact, Defendant's CEO stated in a press release that "These seminars are designed to teach doctors how to get better outcomes both clinically and financially by incorporating Diowave's Class IV High Power Lasers into their

---

[2] *See* http://www.diowavelaser.com/

[3] www.diowavelaser.com/_literature_182213/2015_Laser_Price_List

[4] *Id.*

practices."[5] As such, recipients of the faxes are encouraged to buy Diowave lasers at or following Defendant's seminars.

10. Also according to Diowave's CEO, his company will provide to any seminar attendee "travel reimbursement up to $1,000 for those who ***purchase*** a Diowave laser."[6] (Emphasis added.) As such, the main purpose of Defendant's faxes and seminars is to introduce Defendant and its product to potential customers and solicit them to purchase or lease Defendant's Diowave laser products.

11. Unfortunately for recipients of the faxes, as part of its marketing efforts Defendant sends unsolicited fax advertisements to invite them to its seminars so that they, the fax recipients may ultimately and eventually purchase or lease Diowave lasers.

12. The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The JFPA provides a private right of action and provides statutory damages of $500 per violation.

13. Defendant sent a facsimile transmission of an unsolicited advertisement to Plaintiff and the Class in violation of the JFPA, on July 6, 2016. (*See* "Technological Medical Advancements Fax," a true and correct copy of which is attached hereto as Exhibit A.) The Technological Medical Advancements Fax promotes the services and goods of Defendant by encouraging recipients to attend a seminar that is designed to teach the attendees the benefits of Defendant's product and how purchasing or leasing the Diowave laser product and incorporating it in the recipients' medical practices will increase their revenue. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant has sent, and

---

[5] http://www.prweb.com/releases/2015/07/prweb12829203.htm

[6] *Id.*

continues to send, unsolicited advertisements via facsimile transmission in violation of the JFPA to at least forty (40) other persons as well (and likely to hundreds, or even thousands, of persons).

14. Unsolicited faxes cause concrete harm to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's time that would have been spent on something else like running the recipient's business. A junk fax also interferes with, invades, and intrudes upon the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional time and labor to attempt to discern the source and purpose of the unsolicited message. Such faxes are annoying and are a hassle to deal with.

15. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the JFPA.

16. Defendant's facsimile transmissions were and are being done in the same or similar manner. That is, Defendant used the same equipment to send facsimiles to Plaintiff as it used to send facsimiles to everyone else. And Defendant received the exact same express invitation or permission from each class member (which is none). As such, this action is based on the same legal theory for liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, to have such damages trebled, as provided by § 227(b)(3) of the Act. Plaintiff requests that such monies be paid into a common fund for the benefit of the Class.

## FACTS SPECIFIC TO PLAINTIFF CHIROPRACTIC CENTER OF LOS ANGELES

17. On or about July 6, 2016, Defendant transmitted by telephone facsimile machine a total of fourteen (14) unsolicited faxes to Plaintiff. Copies of the facsimiles are attached hereto as Group Exhibit A. The faxes were sent two-at-a-time, labelled as Page 1 and Page 2. Each fax is identical. The faxes were received by Plaintiff on:

- July 6, 2016 – 6:43 AM Page 1
- July 6, 2016 – 6:43 AM Page 2
- July 6, 2016 – 6:48 AM Page 1
- July 6, 2016 – 6:48 AM Page 2
- July 6, 2016 – 6:52 AM Page 1
- July 6, 2016 – 6:52 AM Page 2
- July 6, 2016 – 6:58 AM Page 1
- July 6, 2016 – 6:58 AM Page 2
- July 6, 2016 – 7:02 AM Page 1
- July 6, 2016 – 7:02 AM Page 2
- July 6, 2016 – 7:07 AM Page 1
- July 6, 2016 – 7:07 AM Page 2
- July 6, 2016 – 7:15 AM Page 1
- July 6, 2016 – 7:15 AM Page 2

18. Technological Medical Advancements knew about, profited by and received the benefits of marketing of its products and is a responsible party under the JFPA.

19. Defendant created or made the faxes set forth in Group Exhibit A, which Defendant knew or should have known advertises Defendant's goods or products (namely, laser based therapies for pain management), and Defendant

intended to and did in fact distribute the faxes to Plaintiff and the other members of the Class.

20. Group Exhibit A is part of Defendant's work or operations to market Defendant's goods which are performed by Defendant and/or on behalf of Defendant. Therefore, Group Exhibit A constitutes material furnished in connection with Defendant's work or operations.

21. Plaintiff had not invited or given permission to Defendant to send the fax and had no prior relationship, business or otherwise, with Defendant.

22. On information and belief, Defendant faxed the same unsolicited facsimile to Plaintiff and more than forty (40) other recipients (and potentially hundreds of others) without first receiving the recipients' express permission or invitation.

23. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners actually desire to receive.

24. Defendant's facsimile did not display a proper opt-out notice as required by 47 C.F.R. 64.1200 because, *inter alia*, it did not apprise recipients of their legal ability to opt out, that they could opt out of all of their fax numbers, and that failure to comply within thirty (30) days of a lawful opt out request is illegal.

## CLASS ACTION ALLEGATIONS

25. In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiff brings this class action pursuant to the JFPA, on behalf of the following class:

> All persons in the United States who: (1) on or after four years prior to the filing of this action, (2) were sent, by Defendant or on Defendant's behalf, a telephone facsimile message substantially similar to the faxes in Group Exhibit A, (3) from whom Defendant claims it obtained prior express permission or invitation to send those faxes in the same manner

as Defendant claims it obtained prior express consent to fax the Plaintiff, (4) using the same equipment that was used to transmit the faxes in Group Exhibit A to the Plaintiff.

26. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery regarding the Defendant's manner of obtaining prior express permission or invitation.

27. Class Size (F. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is in the hundreds and potentially in the thousands.

28. Commonality (F. R. Civ. P. 23(a)(2)): Common questions of law and fact apply to the claims of all class members that are central to each class members' claim. Common material questions of fact and law include, but are not limited to:

(a) Whether the Defendant sent an unsolicited fax advertisement;

(b) Whether the Defendant's fax advertised the commercial availability of property, goods, or services and whether recipients were encouraged to make any purchase at or following any seminar;

(c) Whether Defendant obtained prior express permission or invitation from the recipients to send the faxes;

(d) Whether the Defendant had a prior business relationship with Plaintiff or the class members;

(e) Whether the Defendant sent the faxed advertisements knowingly;

(f) Whether the Defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

(g) Whether the faxes contained an "opt-out notice" that complies with the requirements of 47 U.S.C. § 227(b)(1)(C)(iii), and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(h) Whether the Defendant should be enjoined from faxing advertisements in the future;

(i) Whether the Plaintiff and the other members of the Class are entitled to statutory damages; and

(j) Whether the Court should award treble damages.

29. Typicality (F. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of all class members. The Plaintiff received the fax sent by or on behalf of the Defendant advertising goods and services of the Defendant during the Class Period. The Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. The Defendant has acted the same or in a similar manner with respect to the Plaintiff and all the class members.

30. Fair and Adequate Representation (F. R. Civ. P. 23(a)(4)): The Plaintiff will fairly and adequately represent and protect the interests of the class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class. Plaintiff is also committed to keeping itself apprised of the litigation and to representing the Class Members' interests.

31. Common Conduct (F. R. Civ. P. 23 (b)(2)): Class certification is appropriate because the Defendant has acted and refused to act in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate. The Plaintiff demands such relief as authorized by 47 U.S.C. § 227.

32. Predominance, Superiority, and Manageability (F. R. Civ. P. 23(b)(3)): Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of the claims of the Plaintiff will also prove the claims of the Class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that the Defendant may assert and prove will come from the Defendant's records and will not require individualized or separate inquiries or proceedings;

(c) The Defendant has acted and continues to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs. The common questions cut to the heart of the case and predominate over any supposed individualized issues; and

(e) This case is manageable and superior to maintain as a class action in that:

i. The Defendant identified persons or entities to receive the fax transmission, and Defendant's computer and business records will enable the Plaintiff to readily identify class members and establish liability and damages;

ii. Liability and damages can be established for the Plaintiff and the Class with the same common proofs, namely the form nature of the faxes and any list of fax recipients where permission or invitation was provided in the same way as it was supposedly provided by Plaintiff;

iii. Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

iv. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

v. A class action will contribute to uniformity of decisions concerning the Defendant's practices; and

vi. As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## FIRST CAUSE OF ACTION

### Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227, et seq.

### (On Behalf of Plaintiff and the Class)

33. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

34. The JFPA makes unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement …" 47 U.S.C. § 227(b)(1)(C).

35. The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

36. The faxes sent by Defendant invited attendees to a seminar held by Defendant which was designed to pitch doctors on the benefits of Defendant's

products and why purchasing or leasing their product would ultimately help them financially.

37. Plaintiff and the other class members never gave prior express consent, invitation or permission to receive the faxes nor did any of the recipients have any prior established business relationship with Defendant.

38. **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following, among other things (hereinafter collectively, the "Opt-Out Notice Requirements"):

a. a statement that the recipient is entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the right to request an opt-out gives impetus for recipients to make such a request, if desired;

b. a statement that the sender must honor a recipient's opt-out request within thirty (30) days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they do not want future faxes, by advising them that their opt-out requests will have legal "teeth";

c. a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers, and not just with respect to the number or numbers at which fax advertisements have been received from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines.

The requirement of (a) above is incorporated from § (b)(2)(D)(ii) of the Act. The requirement of (b) above is incorporated from § (b)(2)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order (In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect

on August 1, 2006). The requirements of (c) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of fax machines giving them the right, and means, to stop unwanted faxed advertisements. As a result of such requirements, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxes advertisement gave “prior express permission or invitation” to receive the faxes nor can the sender claim the exemption from liability contained in § (b)(1)(C) of the Act.

39. **The Fax**. Defendant sent the July 6, 2016 fax via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of Plaintiff and members of the Class. The Faxes set forth in Group Exhibit A constitute advertisements under the Act. Defendant failed to comply with the Opt-Out Requirements. The faxes fail to apprise recipients of their ability to opt out, that a failure to comply with an opt-out request within thirty (30) days is unlawful, or that the recipient can opt out of having all of their fax numbers faxed by Defendant. Indeed, the faxes fail to provide any information regarding opting out or a means to opt out. The Faxes were transmitted to persons or entities without their prior express permission or invitation and/or Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements. Defendant violated the JFPA and the regulations promulgated thereunder by sending the faxes via facsimile transmission to Plaintiff and members of the Class.

40. **Defendant’s Other Violations of the TCPA**. Plaintiff is informed and believes, and upon such information and belief avers, that during the period

preceding four (4) years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). Defendant violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

41. The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendant's violations of the Act, and provides for statutory damages. (47 U.S.C. § 227(b)(3).) The Act also provides that injunctive relief is appropriate. *Id.*

42. The JFPA is a strict liability statute. The Defendant is liable to the Plaintiff and the other class members even if it did not intend to send the faxes or to send them without first obtaining prior express invitation or permission.

43. Nevertheless, Defendant knew or should have known that (a) the Plaintiff and the other class members had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's goods or services; (b) the faxes constituted an advertisement; and (c) the faxes did not apprise recipients of their opt out rights, the manner for opting out, the consequences of opting out, or other required opt-out information.

44. The Defendant's actions caused damages to the Plaintiff and the other class members. Receiving the Defendant's junk faxes caused the recipients to lose

paper and toner consumed in the printing of the Defendant's faxes. Moreover, the Defendant's faxes used the Plaintiff's fax machine. The Defendant's faxes cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing and routing the Defendant's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's business activities. The Defendant's faxes unlawfully invaded the Plaintiff's and other Class Members' privacy interests in being left alone and were annoying. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of Defendant's advertisements occurred outside of Defendant's premises.

45. As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

46. Furthermore, in the event the Court finds that Defendant's conduct was willful and knowing, the Court should, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chiropractic Center of Los Angeles, on behalf of itself and the class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Chiropractic Center of Los Angeles as the representative of the Class and appointing its attorneys as Class Counsel;

2. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, to be trebled in the event Defendant is found to have acted willfully, and to be paid into a common fund for the benefit of the class members;

3. An order declaring that Defendant's faxes constitute unsolicited advertisements, that they lack the required opt out language, and that Defendant sent

the faxes without first obtaining prior express invitation, permission or consent of the recipients, and enjoining Defendant from further violations, and otherwise protecting the interests of the Class;

4. An award of pre-judgment interest;

5. An award of reasonable attorneys' fees and costs to be paid from the common fund prayed for above; and

6. Such further and other relief the Court deems reasonable and just.

Dated: October 31, 2016 THE GIMINO LAW OFFICE, APC

By: /s/ *Peter J. Gimino III*
Peter J. Gimino III

WOODROW & PELUSO, LLC

Attorneys for Plaintiff Jennifer Botelho, d/b/a Chiropractic Center of Los Angeles, and the Putative Class

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 31, 2016 THE GIMINO LAW OFFICE, APC

By: /s/ *Peter J. Gimino III*
Peter J. Gimino III

WOODROW & PELUSO, LLC

Attorneys for Plaintiff Jennifer Botelho, d/b/a Chiropractic Center of Los Angeles, and the Putative Class