**THE GIMINO LAW OFFICE, APC**
Peter J. Gimino III, Esq. (SBN 198926)
pgimino@giminolaw.com
1 Park Plaza, Suite 600
Irvine, CA 92614
Telephone: (949) 225-4446
Facsimile: (949) 225-4447

**WOODROW & PELUSO, LLC**
Steven L. Woodrow*
swoodrow@woodrowpeluso.com*
Patrick H. Peluso*
ppeluso@woodrowpeluso.com*
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809
*Pro Hac Vice*

Attorneys for Plaintiff Jennifer Botelho, d/b/a
Chiropractic Center of Los Angeles, and the Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **JENNIFER BOTELHO d/b/a CHIROPRACTIC CENTER OF LOS ANGELES,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TECHNOLOGICAL MEDICAL ADVANCEMENTS L.L.C.,** a Florida limited liability company,<br><br>Defendant. | Case No. 2:16-cv-08085-SVW-MRW<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: July 17, 2017<br><br>Judge: Stephen V. Wilson |

## I. INTRODUCTION

This case challenges Technological Medical Advancements, LLC's ("Defendant" or "TMA") straightforward violations of the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227, *et seq*. ("JFPA" or the "Act"). In short, TMA violated the JFPA by sending unsolicited facsimile advertisements to Plaintiff Jennifer Botelho d/b/a Chiropractic Center of Los Angeles ("Botelho" or "Plaintiff") and by failing to include opt-out language on the faxes as required by 47 C.F.R. 64.1200.

To hear TMA tell it, however, Plaintiff can't proceed to trial: TMA asserts that the **fourteen faxes** it sent to Plaintiff were not unsolicited because "the recipients were on an opt-in list purchased by TMA [from a company called Stack Creations]". (Def. MSJ at 5.) Based solely on this, TMA claims there is no genuine dispute as to any material fact and that summary judgment must be awarded in its favor. (*Id.* at 4.)

In reality—and notwithstanding TMA's strident efforts to skirt liability at such an early stage of the case (no oral discovery has been taken at all)—the record is already replete with genuine issues of material fact[1] that preclude summary judgment. These include:

- Whether the Contact List Defendant purchased from Stack Creations was "opt-in" and "permission-based" such that faxes sent to persons on the Contact List were necessarily solicited,

- Whether TMA took any steps prior to the sending of the faxes at issue to obtain the recipients' express permission or invitation to send the faxes,

- Whether an Established Business Relationship ("EBR") exists between TMA and Botelho (and other recipients), and

- Whether the faxes at issue contained the required opt-out language.

---

[1] As will be presented to the Court on a more complete record at a more appropriate time, the factual issues present in the case are not only material and genuine, they are susceptible to proof based on common evidence and are answerable "in a single stroke"—thus supporting certification of the class under Federal Rule 23.

1

Such questions, most of which TMA doesn't bother to address at all, put summary judgment out of reach at this time. A reasonable trier of fact could conclude that Defendant's faxes were unsolicited (that is, sent without the recipients' prior express permission or invitation), that TMA fails to satisfy the three-pronged test for the JFPA's EBR safe-harbor, and that TMA's faxes fail to contain proper opt-out language.[2]

The simple truth is that TMA's Motion for Summary Judgment is premature and made on a barren record—TMA didn't bother to serve discovery requests on Plaintiff prior to filing its Motion, and TMA's responses to Plaintiff's discovery requests are not due until June 26, 2017. Indeed, the key question presented by TMA—whether its faxes are somehow considered "solicited" by virtue of the fact it purchased a list of fax numbers from Stack Creations—is entirely unexplored. Indeed, the first Plaintiff ever even heard about Stack Creations was when TMA filed its Motion for Summary Judgment.

And even putting aside the sparse record and issues of material fact, the legal contentions sent forth in Defendant's Motion reveal a serious misunderstanding of the law. According only to TMA, "the TCPA provides for an exception where 'the sender obtained the number of the telephone facsimile machine through a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution'." (Def. MSJ at 5.) This is simply inaccurate. TMA is relying on only the second prong of the three-prong EBR safe harbor test—in other words, two

---

[2] If anything the record supports summary judgment in Plaintiff's favor on these issues. Plaintiff has elected not to seek summary adjudication at this time, however, so as not to overburden the Court with filings and out of an abundance of caution in light of the prohibition against one-way intervention. *See Gessele v. Jack in the Box, Inc.,* No. C10–0960, 2012 WL 3686274, at *3 (D. Or. Aug. 24, 2012) (quotations omitted); *Gomez v. Rossi Concrete, Inc.,* No. C08–1442, 2011 WL 666888, at *1 (S.D. Cal. Feb.17, 2011) ("Absent extraordinary circumstances, it is appropriate to postpone ruling on a plaintiff's motion for summary judgment until after class definition issues are settled, notice has been given, and the period for class members to exclude themselves has expired[.]")

other elements (which TMA doesn't address) must be met in order for the EBR exception to apply. TMA must also prove that it has an established business relationship with the recipient and that the fax contained proper opt-out notice. 47 U.S.C. § 227(b)(1)(C)(i)-(iii). Neither element can be satisfied (which probably explains TMA's failure to address them), and TMA therefore isn't saved by the JFPA's EBR exception. Thus, even if the myriad factual questions were put aside, TMA's legal theory finds little support in the law.

Accordingly, and as explained below, the Court should deny TMA's Motion for Summary Judgment and allow the case to proceed to class discovery.

## II.     FACTUAL BACKGROUND AND STATEMENT OF DISPUTED MATERIAL FACTS

Plaintiff agrees that the following facts are undisputed: (1) Botelho is a chiropractor who owns a sole proprietorship, Chiropractic Center of Los Angeles ("CCLA"). (Uncontroverted Fact "UF" No. 1); (2) Botelho's principal place of business is in Los Angeles, California. (UF No. 2); (3) TMA is a limited liability company incorporated and existing under the laws of the State of Florida, with a principal place of business at 3879 Byron Drive, Riviera Beach, Florida 33404. (UF No. 3); and (4) TMA does business throughout the nation, including in the State of California and in this District. (UF No. 4.)

This is where the agreement ends. First, Defendant contends (for the first time) that it purchased a "permission-based" Contact List from a company known as Stack Creations in July 2015. (Def. MSJ at 3.) Botelho has no idea who Stack Creations is, has never provided her contact information to Stack Creations, and certainly never gave "permission" to Stack Creations to sell her information. (Declaration of Jennifer Botelho, attached hereto as Exhibit A, ¶¶ 6-7.) Plaintiff has not yet had an opportunity to serve a subpoena on Stack Creations for information related to this Contact List because Botelho first learned about Stack Creations on June 16, 2017 when Defendant filed its Motion (despite requests

3

from Plaintiff's counsel asking Defense counsel for the identity of any third-party from whom TMA obtained Plaintiff's fax number). (Declaration of Patrick H. Peluso, attached hereto as Exhibit B, at ¶ 4.)

Moreover, Plaintiff has never done business with Defendant and does not have an EBR with Defendant. (Botelho Decl. at ¶ 9.) She likewise has never provided Defendant with prior express permission or invitation for Defendant to send her faxes. (*Id.* at ¶ 8.)

Finally, Plaintiff disagrees with the contention that Stack Creations' Contact List was "opt-in, permission-based, and each contact was verified prior to delivery". (Def. MSJ at 3.) Aside from TMA's self-serving (and completely untested) assertions, there is no basis for concluding that this contention is accurate.

Indeed, just the opposite is true: the Contact List contains seven entries with Plaintiff's fax number, one for her and six for a person named "Paul Weber". (*See* Def MSJ, Ex. D, at 47.) Plaintiff bought her practice from Paul Weber and completed the purchased in 2010, and Weber has not been associated with the practice at all since 2010. (Botelho Decl. at ¶¶ 4-5.) Thus, while TMA may wish to assert that the Contact List was "opt-in, permission-based, and each contact was verified prior to delivery", the facts do not support this conclusion—it appears TMA purchased an out-of-date, unverified, and inaccurate list where the persons listed on the list did not give permission to be included and certainly never gave express permission for TMA to fax them.[3]

Finally, TMA contends that Plaintiff received 14 faxes because the fax list it blasted contained Plaintiff's fax number in 7 different entries (6 for Paul Weber, 1 for Plaintiff), and due to some technical error 2 faxes were sent to each

---

[3] As will be shown after an appropriate period of discovery, the 490,000 physicians, 23,100 veterinarians, and 28,400 chiropractors on the Contact List did not "opt-in" or give permission to be on the Contact List. Under the TCPA, each of them who received an unlawful fax from TMA is entitled to statutory damages in the amount of $500 per fax.

4

entry. (Def. MSJ at 4.) As stated above, Weber has not been involved with Plaintiff's practice since 2010 and has had no association with the fax number since that date. (Botelho Decl. at ¶ 5.) As to the technical error, TMA contends that there was a "disconnection occurring during the first attempt [at sending the faxes] that resulted in a lack of confirmation of receipt and automatic re-sending." (Def. MSJ at 4.) As with TMA's other assertions, Botelho did not learn about this supposed fact until Defendant filed the instant Motion, and Plaintiff has not had the opportunity to test it via deposition or written discovery request. (Peluso Decl. at ¶ 5.) At any rate, this supposed "disconnection" doesn't save TMA from liability—the TCPA is a strict liability statute that bars unsolicited fax advertisements sent without the recipient's prior express permission or invitation.

Based on this record, and as demonstrated below, the Court should refuse to grant summary judgment in TMA's favor.

## III. ARGUMENT

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case, *Id.* at 322-323, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in a light most favorable to the non-moving party. *Cnty. Of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

### A. Genuine Issues of Material Fact Abound Regarding Whether People on the Contact List Opted-In to Receiving Such Faxes, and Whether TMA and Botelho Shared an EBR

As an initial matter, summary judgment is inappropriate here because there are genuine issues of material fact.

First, whether the Contact List TMA purchased from Stack Creations means that faxes sent to such recipients were solicited is a disputed material fact. Defendant asserts that the Contact List purchased from Stack Creations was "opt-in" and "permission-based". Plaintiff, on the other hand, has never heard of Stack Creations, never provided her contact information to Stack Creations, never gave "permission" to Stack Creations to sell her information, and has not provided Stack Creations or TMA prior express permission or invitation to send her faxes. (Botelho Decl. ¶¶ 6-7.)

Second, it is unknown at this time, and thus in dispute, whether TMA took any steps prior to sending faxes to Plaintiff and other recipients to obtain the recipients prior express permission or invitation to send the faxes. Plaintiff denies providing any such permission. (*Id.* ¶ 8.) Discovery is plainly needed to determine the actions TMA took, if any, to obtain such permission/invitation.

Moreover, there is a genuine dispute about whether TMA and Botelho have an established business relationship. Plaintiff denies ever doing business with TMA and had no interaction with TMA prior to the receipt of the fourteen faxes at issue. (Botelho Decl. ¶¶ 8-9.) TMA, by attempting to invoke the EBR safe harbor, claims the opposite is somehow true.

The barren record in this case renders it practically impossible to conclude that summary judgment is proper. Many of the "facts" set forth by TMA were not known to Plaintiff until the filing of TMA's Motion on June 16, 2017, and Plaintiff has had no opportunity to undertake discovery into these "facts".

As such, to the extent summary judgment isn't denied outright, at the very least consideration of TMA's Motion should be deferred until such time as Botelho can gather the essential facts. *See* Fed.R.Civ.P. 56(d). ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

discovery; or (3) issue any other appropriate order.") Indeed, "the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition'." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). That is plainly the case here, where Botelho has had no opportunity to gather facts or evidence in support of her claims at all.

Hence, the record is replete with genuine issues of material fact, and TMA is not entitled to summary judgment in its favor. At the very least, however, the Court should defer consideration of TMA's Motion until an appropriate amount of discovery has taken place.

As explained next, even if no factual issues were present (they plainly are), TMA is wrong on the law in any case.

### B. TMA is Wrong on the Law—It Argues Only One Prong of a Three Prong Test for EBRs Under the JFPA.

Setting aside the factual issues raised above, TMA's Motion should still be denied because TMA misunderstands the law. The JFPA prohibits the sending of "unsolicited advertisements" to a facsimile machine. 47 U.S.C. § 227(b)(1)(C). The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

As a safe harbor to this rule barring the sending of unsolicited fax advertisements, the Act contains an EBR exception. *See Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15–16 (D.D.C. 2015) ("The TCPA exempts from liability 'unsolicited advertisements' sent to recipients with whom the sender has an 'an established business

7

relationship.'") 47 U.S.C. § 227(b)(1)(C)(i).[4] Such a relationship in and of itself isn't enough. Rather:

> Merely demonstrating an 'established business relationship' between the sender and recipient, however, is insufficient to come within the safe harbor. To qualify, a facsimile also must contain a "notice," 47 U.S.C. § 227(b)(1)(C)(iii), that includes certain statutorily required elements, *id.* at § 227(b)(2)(D). Those elements include a specific written disclosure 'that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements ... *and* that failure to comply, within the shortest reasonable time, as determined by the [FCC], ... is unlawful.' *Id.* at § 227(b)(2)(D)(ii) (emphasis added). The FCC has issued rules that define 'shortest reasonable time' as 30 days and provide that 'failure to comply [with a request to opt out], within 30 days ... is unlawful.' 47 C.F.R. § 64.1200(a)(4)(iii)(B); *see also City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.,* Civ. Action No. 11–2658, 96 F.Supp.3d 403, 418, 2015 WL 1421539, at *11 (D.N.J. Mar. 27, 2015) ('[T]he advertisement ... must state that the sender's failure to comply with a request or removal within 30 days violates applicable law[.]').

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15–16 (D.D.C. 2015); *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 885 (N.D. Ill. 2014). As the D.C. Circuit recently explained:

> The Act contains an exception that allows certain unsolicited fax advertisements. The statute permits unsolicited fax advertisements where **(1) "the unsolicited advertisement is from a sender with an established business relationship with the recipient"**; (2) the sender obtained the recipient's fax number through "voluntary communication" with the recipient or "the recipient voluntarily agreed to make" his information available in "a directory, advertisement, or site on the Internet"; **and (3) the unsolicited advertisement "contains a notice meeting the requirements under paragraph (2)(D)."** Id. § 227(b)(1)(C)(i)-(iii). Paragraph (2)(D), in turn, provides, among other things, that the notice must be "clear and conspicuous" and "on the first page of the unsolicited advertisement," must state that the recipient may opt out from "future unsolicited advertisements," and must include a "cost-free mechanism" to send an opt-out request "to the sender of the unsolicited advertisement." Id. § 227(b)(2)(D).

*Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir. Mar. 31, 2017) (emphasis added).

---

[4] An "established business relationship" is "a prior or existing relationship formed by a voluntary two-way communication ... on the basis of an inquiry, application, purchase or transaction ... regarding products or services ..., which ... has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(6).

Thus, as the statute and case law make clear, the EBR safe harbor is a three-prong test. <u>First</u>, the sender must have an established business relationship with the recipient. <u>Second</u>, the sender must have received the recipients number either directly from the recipient via voluntary communication or from a directory, advertisement, or website. <u>Third</u> and finally, the fax sent must contact proper opt-out notice as described in 47 U.S.C. § 227(b)(2)(D).

Applied here, TMA substitutes a three-prong test for a one-prong test and asserts:

> TMA obtained Plaintiff's fax number by purchasing the Contact List, which was a directory obtained via the internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution. Consequently, communication from any third-party that purchased Plaintiff's contact information from Stack Creations would fall under the exception identified in 47 U.S.C. § 227(b)(1)(C)(ii)(II) and would not be actionable under the JFPA. This is sufficient to establish that TMA is entitled to summary judgment in its favor as a matter of law."

(Def Mot. at 6.) A cursory review of the statute and case law demonstrates this is inaccurate. Even if the Contact List "was a directory obtained via the internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,"[5] that doesn't end the analysis. That is, TMA cannot merely argue that it met the second prong and the EBR test and ignore the other two elements. As the D.C. Circuit has made clear, all three prongs must be met. TMA doesn't bother alleging that it actually has an EBR with Botelho based on any sales or transactions (odd, since it is attempting to invoke the EBR safe harbor) nor does it bother alleging that its faxes contained proper opt-out language (likely because the faxes plainly do not, *see* Compl. Ex. A).

As a result, TMA is incorrect on the law and its Motion for Summary Judgment should be denied on this basis alone.

---

[5] Again, Plaintiff disputes this "fact" and contends she never provided her facsimile number to Stack Creations or TMA. (Botelho Decl. ¶¶ 6-9.)

**C.  TMA's Citations to Inapposite Cases Concerning Text Messages Fail to Save Its Motion**

As a final point, TMA's reliance on *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) and *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100 (C.D. Cal. 2014) is misplaced. Satterfield is a text message case that dealt with an entirely separate section of the Act which contains different rules and regulations. *Satterfield,* 569 F.3d 946, 954 (9th Cir. 2009). More importantly, however, *Satterfield* does not support TMA's position that it had permission to fax Plaintiff because it received her number from a third-party, Stack Creations. (Def. Mot. at 6.) In fact, *Satterfield,* which found that the supposed consent received in that case (which had been obtained from a third-party) was insufficient, undercuts TMA's position:

> Finally, the district court erred in granting summary judgment based upon Satterfield expressly consenting to receiving the message. While the TCPA exempts those calls "made with the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(A), no express consent was given in this case. Express consent is "[c]onsent that is clearly and unmistakably stated." Black's Law Dictionary 323 (8th ed.2004). Satterfield solely consented to receiving promotional material from Nextones or their affiliates and brands. The term "affiliate" carries its own, independent legal significance. "Affiliate refers to a 'corporation that is related to another corporation by shareholdings or other means of control....' " *Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.,* 892 A.2d 1073, 1077 (Del.2006) (quoting Black's Law Dictionary 59 (7th ed.1999)). The plain and ordinary meaning of "affiliate"[4] supports this definition as "a company effectively controlled by another or associated with others under common ownership or control." Webster's Third New International Dictionary 35 (2002). The record confirms that Nextones neither owns nor controls Simon & Schuster, nor can Nextones be considered a Simon & Schuster subsidiary.

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954–55 (9th Cir. 2009). Similarly here, Defendant cannot show that Stack Creations is its affiliate or its subsidiary or that any consent language covered both Stack Creations and TMA.

As such, even assuming *arguendo* that Stack Creations obtained Plaintiff's prior express permission or invitation from Botelho to send her faxes (it didn't), that mysterious permission (which TMA has failed to produce) would not extend to Defendant.

The same is true of the second case TMA relies on, *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100 (C.D. Cal. 2014). (Def. Mot. at 6.) *Baird* is another text message case that deals with an entirely different section of the Act than the one at issue here. Putting aside that point, *Baird* offers TMA no help. The *Baird* Court held:

> [T]his case is unlike *Satterfield,* in which the plaintiff consented to receive messages from a business and its affiliates, but not from wholly unrelated enterprises. *Cf. Satterfield,* 569 F.3d at 955 ("[T]he record shows no direct contractual relationship between Nextones and Simon & Schuster."). No reasonable consumer could believe that consenting to be contacted by an airline company about a scheduled flight requires that all communications be made by direct employees of the airline, but never by any contractors performing services for the airline.

*Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014), aff'd, 636 F. App'x 715 (9th Cir. 2016).

Applied here, this is not a case where Plaintiff is claiming that the contact she received is somehow outside the scope of consent provided—Plaintiff provided **no consent** to either Stack Creations or TMA, so *Baird* is wholly-inapposite for this reason as well.

For this reason as well, Defendant's Motion should be denied.

## IV. CONCLUSION

For the reasons explained above, TMA's Motion for Summary Judgment should be denied in its entirety.

11

| | | |
|---|---|---|
| 1 | June 23, 2017 | Respectfully Submitted, |
| 2 | | |
| 3 | | **Jennifer Botelho**, individually and on behalf of all other similarly situated, |
| 4 | | |
| 5 | | /s/ Patrick H. Peluso |
| 6 | | One of Plaintiff's Attorneys |
| 7 | | Peter J. Gimino III |
| 8 | | The Gimino Law Office, APC 1 Park Plaza, Suite 600 |
| 9 | | Irvine, CA 92614 Tel: 949-225-4446 |
| 10 | | Fax: 949-225-4447 Email: pgimino@giminolaw.com |
| 11 | | Steven L. Woodrow* |
| 12 | | swoodrow@woodrowpeluso.com Patrick H. Peluso* |
| 13 | | ppeluso@woodrowpeluso.com Woodrow & Peluso, LLC |
| 14 | | 3900 E Mexico Avenue Suite 300 |
| 15 | | Denver, Colorado 80210 Tel: 720-213-0675 |
| 16 | | Fax: 303-927-0809 |
| 17 | | *Pro Hac Vice |

12

# **CERTIFICATE OF SERVICE**

The undersigned, Patrick H. Peluso, hereby certifies that a true and correct copy of Plaintiff's "Response to Defendant's Motion for Summary Judgment" was served upon counsel of record by filing such papers via the Court's ECF system on June 23, 2017.

/s/ Patrick H. Peluso